(Slip Opinion)        OCTOBER TERM, 2013        1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* QUALITY STORES, INC., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 12–1408.   Argued January 14, 2014—Decided March 25, 2014

Respondent Quality Stores, Inc., and its affiliates (collectively Quality Stores) made severance payments to employees who were involuntarily terminated as part of Quality Stores' Chapter 11 bankruptcy. Payments—which were made pursuant to plans that did not tie payments to the receipt of state unemployment insurance—varied based on job seniority and time served.  Quality Stores paid and withheld, *inter alia*, taxes required under the Federal Insurance Contributions Act (FICA), 26 U. S. C. §3101 *et seq.*  Later believing that the payments should not have been taxed as wages under FICA, Quality Stores sought a refund on behalf of itself and about 1,850 former employees.  When the Internal Revenue Service (IRS) did not allow or deny the refund, Quality Stores initiated proceedings in the Bankruptcy Court, which granted summary judgment in its favor.  The District Court and Sixth Circuit affirmed, concluding that severance payments are not wages under FICA.

*Held*: The severance payments at issue are taxable wages for FICA purposes.  Pp. 4–15.

   (a) FICA defines "wages" broadly as "all remuneration for employment."  §3121(a).  As a matter of plain meaning, severance payments fit this definition: They are a form of remuneration made only to employees in consideration for employment.  "Employment" is "any service . . . performed . . . by an employee" for an employer.  §3121(b).  By varying according to a terminated employee's function and seniority, the severance payments at issue confirm the principle that "service" "mea[ns] not only work actually done but the entire employer-employee relationship for which compensation is paid."  *Social Security Bd.* v. *Nierotko*, 327 U. S. 358, 365–366.  This broad definition is reinforced by the specificity of FICA's lengthy list of exemptions.  The

exemption for severance payments made "because of . . . retirement for disability," §3121(a)(13)(A), would be unnecessary were severance payments generally not considered wages. FICA's statutory history sheds further light on the definition. FICA originally contained definitions of "wages" and "employment" identical in substance to the current ones, but in 1939, Congress excepted from "wages" "[d]ismissal payments" not legally required by the employer, 53 Stat. 1384. Since that exception was repealed in 1950, FICA has contained no general exception for severance payments. Pp. 4–7.

   (b) The Internal Revenue Code chapter governing income-tax withholding does not limit the meaning of "wages" for FICA purposes. Like FICA's definitional section, §3401(a) has a broad definition of "wages" and contains a series of specific exemptions. Section 3402(*o*) instructs that "supplemental unemployment compensation benefits" or SUBs, which include severance payments, be treated "as if" they were wages. Contrary to Quality Stores' reading, this "as if" instruction does not mean that severance payments fall outside the definition of "wages" for income-tax withholding purposes and, in turn, are not covered by FICA's definition. Nor can Quality Stores rely on §3402(*o*)'s heading, which refers to "certain payments other than wages." To the extent statutory headings are useful in resolving ambiguity, see *FTC* v. *Mandel Brothers, Inc.*, 359 U. S. 385, 388–389, §3402(*o*)'s heading falls short of declaring that all the payments listed in §3402(*o*) are "other than wages." Instead, §3402(*o*) must be understood in terms of the regulatory background against which it was enacted. In the 1950's and 1960's, because some States provided unemployment benefits only to terminated employees not earning wages, IRS Rulings took the position that severance payments tied to the receipt of state benefits were not wages. To address the problem that severance payments were still considered taxable income, which could lead to large year-end tax liability for terminated workers, Congress enacted §3402(*o*), which treats both SUBs and severance payments the IRS considered wages "as if" they were wages subject to withholding. By extending this treatment to all SUBs, Congress avoided the practical problems that might arise if the IRS later determined that SUBs besides severance payments linked to state benefits should be exempt from withholding. Considering this regulatory background, the assumption that Congress meant to exclude all SUBs from the definition of "wages" is unsustainable. That §3402(*o*) does not narrow FICA's "wages" definition is also consistent with the major principle of *Rowan Cos.* v. *United States*, 452 U. S. 247: that simplicity of administration and consistency of statutory interpretation instruct that the meaning of "wages" should be in general the same for income-tax withholding and for FICA calculations. Pp. 7–

Syllabus

14.

693 F. 3d 605, reversed and remanded.

KENNEDY, J., delivered the opinion of the Court, in which all other Members joined, except KAGAN, J., who took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 12–1408

## UNITED STATES, PETITIONER *v.* QUALITY STORES, INC., ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[March 25, 2014]

JUSTICE KENNEDY delivered the opinion of the Court.

This case presents the question whether severance payments made to employees terminated against their will are taxable wages under the Federal Insurance Contributions Act (FICA), 26 U. S. C. §3101 *et seq.*

The Court of Appeals for the Sixth Circuit held that the payments are not wages taxed by FICA. To reach its holding, the Court of Appeals relied not on FICA's definition of wages but on §3402(*o*) of the Internal Revenue Code, a provision governing income-tax withholding. That conclusion, for the reasons to be discussed, was incorrect.

FICA's broad definition of wages includes the severance payments made here. And §3402(*o*) does not alter that definition. Section 3402(*o*) instructs that any severance payment "shall be treated as if it were a payment of wages." According to the Court of Appeals, §3402(*o*) suggests that the definition of wages for income-tax withholding does not extend to severance payments; and so, the argument continues, severance payments also must be beyond the terms of FICA's similar definition. But §3402(*o*) is entirely compatible with the proposition that some or all

payments do fall within the broad definition of the term wages. Section 3402(*o*) was enacted in response to a narrow, specific problem regarding income-tax withholding. In addition, were the Court to rule that the severance payments made here are exempt from FICA taxation but not from withholding under §3402 for income-tax purposes, it would contravene the holding in *Rowan Cos.* v. *United States*, 452 U. S. 247 (1981), which held there should be congruence in the rules for FICA and income-tax withholding.

I

Quality Stores, Inc., an agricultural-specialty retailer, entered bankruptcy proceedings in 2001. Before and following the filing of an involuntary Chapter 11 bankruptcy petition, respondents Quality Stores and affiliated companies, all referred to here as Quality Stores, terminated thousands of employees. The employees received severance payments, which all parties to this case stipulate were the result of a reduction in work force or discontinuance of a plant or operation. The payments were made pursuant to one of two different termination plans. (For reasons later to be explained, it should be noted that neither termination plan tied severance payments to the receipt of state unemployment compensation.)

Under the first plan, terminated employees received severance pay based on job grade and management level. The president and chief executive officer received 18 months of severance pay, senior managers received 12 months of severance pay, and other employees received one week of severance pay for each year of service.

The second plan was designed to facilitate Quality Stores' postbankruptcy operations and encourage employees to put off their job searches. To receive severance pay, employees had to complete their last day of service as determined by the employer. Officers received between 6

and 12 months of severance pay, and full-time employees and employees paid by the hour received one week of severance pay for every year of service if the employees had been employed for at least two years, up to a stated maximum of severance pay. Workers who had been employed for less than two years received a week of severance pay.

Quality Stores reported the severance payments as wages on W–2 tax forms, paid the employer's required share of FICA taxes, and withheld employees' share of FICA taxes. Then Quality Stores asked 3,100 former employees to allow it to file FICA tax refund claims for them. About 1,850 former employees agreed to allow Quality Stores to pursue FICA refunds. On its own behalf and on behalf of the former employees, Quality Stores filed for a refund of $1,000,125 in FICA taxes. The Internal Revenue Service neither allowed nor denied the claim.

Quality Stores initiated a proceeding in the Bankruptcy Court seeking a refund of the disputed amount. The Bankruptcy Court granted summary judgment in its favor. The District Court and Court of Appeals for the Sixth Circuit affirmed, concluding that severance payments are not "wages" under FICA. See *In re Quality Stores, Inc.*, 693 F. 3d 605 (2012). Other Courts of Appeals, however, have concluded that at least some severance payments do constitute wages subject to FICA tax. See*, e.g., CSX Corp.* v. *United States*, 518 F. 3d 1328 (CA Fed. 2008); *University of Pittsburgh* v. *United States*, 507 F. 3d 165 (CA3 2007); *North Dakota State Univ.* v. *United States*, 255 F. 3d 599 (CA8 2001). The United States, claiming that the FICA taxes must be withheld, sought review here; and certiorari was granted, 570 U. S. ___ (2013).

## II

## A

The first question is whether FICA's definition of "wages" encompasses severance payments. The beginning point is the relevant statutory text. *Mississippi ex rel. Hood* v. *AU Optronics Corp.*, 571 U. S. ___, ___ (2014) (slip op., at 5).

To fund benefits provided by the Social Security Act and Medicare, FICA taxes "wages" paid by an employer or received by an employee "with respect to employment." 26 U. S. C. §§3101(a), (b), 3111(a), (b). Congress chose to define wages under FICA "broadly." *Mayo Foundation for Medical Ed. and Research* v. *United States*, 562 U. S. ___, ___ (2011) (slip op., at 2). FICA defines "wages" as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash." §3121(a). The term "employment" encompasses "any service, of whatever nature, performed . . . by an employee for the person employing him." §3121(b).

Under this definition, and as a matter of plain meaning, severance payments made to terminated employees are "remuneration for employment." Severance payments are, of course, "remuneration," and common sense dictates that employees receive the payments "for employment." Severance payments are made to employees only. It would be contrary to common usage to describe as a severance payment remuneration provided to someone who has not worked for the employer. Severance payments are made in consideration for employment—for a "service . . . performed" by "an employee for the person employing him," per FICA's definition of the term "employment." *Ibid.*

In *Social Security Bd.* v. *Nierotko*, 327 U. S. 358 (1946), the Court interpreted the term "wages" in the Social Security statutory context to have substantial breadth. In that case a worker, who had been wrongfully terminated,

sought to have his backpay counted as taxable wages for the purpose of obtaining credits under the Social Security system. The Court stated that the term "service," used with respect to Social Security, "means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer." *Id.*, at 365–366.

As confirmation of that principle, severance payments often vary, as they did here, according to the function and seniority of the particular employee who is terminated. For example, under both termination plans, Quality Stores employees were given severance payments based on job grade and management level. And under the second termination plan, nonofficer employees who had served at least two years with their company received more in severance pay than nonofficer employees who had not—a standard example of a company policy to reward employees for a greater length of good service and loyalty.

In this respect severance payments are like many other benefits employers offer to employees above and beyond salary payments. Like health and retirement benefits, stock options, or merit-based bonuses, a competitive severance payment package can help attract talented employees. Here, the terminations leading to the severance payments were triggered by the employer's involuntary bankruptcy proceeding, a prospect against which employees may wish to protect themselves in an economy that is always subject to changing conditions.

Severance payments, moreover, can be desirable from the perspective of the employer as an alternative or supplemental form of remuneration. In situations in which Chapter 11 bankruptcy reorganization is necessary, an employer may seek to retain goodwill by paying its terminated employees well, thus reinforcing its reputation as a worthy employer. Employers who downsize in a period of slow business may wish to retain the ability to rehire

employees who have been terminated.

A specific exemption under FICA for certain termina-tion-related payments reinforces the conclusion that the payments in question are well within the definition of wages. Section 3121(a)(13)(A) exempts from taxable wages any severance payments made "because of . . . retire-ment for disability." That exemption would be unneces-sary were severance payments in general not within FICA's definition of "wages." Cf. *American Bank & Trust Co.* v. *Dallas County*, 463 U. S. 855, 864 (1983) (declining to read a statute in a manner that would cause "spe-cific exemptions" to be "superfluous"). FICA's definitional section, moreover, provides a lengthy list of specific ex-emptions from the definition of wages. For example, FICA exempts from wages payments on account of disability caused by sickness or accident, cash payments made for domestic service in a private home under a certain amount, and cash tips less than a certain amount. See §§3121(a)(2)(A), (7)(B), (12)(B). The specificity of these exemptions reinforces the broad nature of FICA's defini-tion of wages.

FICA's statutory history sheds further light on the text of §3121, which defines the term "wages." FICA was originally enacted in Title VIII of the Social Security Act, 49 Stat. 636. (In 1939, Title VIII was transferred to the Internal Revenue Code and became FICA. 53 Stat. 1387.) Title VIII contained, in substance, definitions of "wages" and "employment" identical to those FICA now provides. See §811(a), 49 Stat. 639; §811(b), *ibid.* With respect to the Social Security Act, in 1936 the Treasury Department promulgated a regulation stating that the statutory defini-tion of "wages" included "dismissal pay." Bureau of Inter-nal Revenue, Employees' Tax and the Employers' Tax Under Title VIII of the Social Security Act, 1 Fed. Reg. 1764, 1769 (1936). Congress responded a few years later, in 1939, by creating an exception from "wages" for

"[d]ismissal payments which the employer is not legally required to make." Social Security Act Amendments of 1939, §606, 53 Stat. 1384 (codified at 26 U. S. C. §1426(a)(4) (1940 ed.)).

In 1950, however, Congress repealed that exception. Social Security Act Amendments, §203(a), 64 Stat. 525–527. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone* v. *INS*, 514 U. S. 386, 397 (1995). Congress has not revisited its 1950 amendment; and since that time, FICA has contained no exception for severance payments.

## B

The next question is whether §3402(*o*) of the Internal Revenue Code relating to income-tax withholding is a limitation on the meaning of "wages" for FICA purposes. Section 3402 provides:

> "**(*o*) Extension of withholding to certain payments other than wages.**
> "**(1) General rule**
> "For purposes of this chapter (and so much of subtitle F as relates to this chapter)—
> "(A) any supplemental unemployment compensation benefit paid to an individual,
>
> .          .          .          .          .
>
> "shall be treated as if it were a payment of wages by an employer to an employee for a payroll period."

(Pursuant to stipulations by the parties, the Court of Appeals determined that the severance payments constitute "supplemental unemployment compensation benefits," or SUBs. See §3402(*o*)(2)(A). The Court assumes, for purposes of this case, that this premise is correct.)

Quality Stores argues that §3402(*o*)'s instruction that SUBs be treated "as if" they were wages for purposes of

income-tax withholding is an indirect means of stating that the definition of wages for income-tax withholding does not cover severance payments. It contends, further, that if the definition of wages for purposes of income-tax withholding does not encompass severance payments, then severance payments are not covered by FICA's similar definition of wages.

The Court disagrees that §3402(*o*) should be read as Quality Stores suggests. The chapter governing income-tax withholding has a broad definition of the term "wages": "all remuneration . . . for services performed by an employee for his employer, including the cash value of all remuneration (including benefits) paid in any medium other than cash." §3401(a). The definitional section for income-tax withholding, like the definitional section for FICA, contains a series of specific exemptions that reinforce the broad scope of its definition of wages. The provision exempts from wages, for example, any remuneration paid for domestic service in a private home, for services rendered to a foreign government, and for services performed by a minister of a church in the course of his duties. §§3401(a)(3), (5), (9). Severance payments are not exempted, and they squarely fall within the broad textual definition of wages for purposes of income-tax withholding under §3401(a), for the same reasons outlined above with respect to FICA's similar definition of wages.

Quality Stores contends that, the broad wording of the definition in §3401(a) aside, severance payments must fall outside the definition of wages for income-tax withholding. Otherwise, it argues, §3402(*o*) would be superfluous. But, as the Government points out, §3402(*o*)'s command that all severance payments be treated "as if" they were wages for income-tax withholding is in all respects consistent with the proposition that at least some severance payments are wages. As the Federal Circuit explained when construing §3402(*o*), the statement that "all men shall be

treated as if they were six feet tall does not imply that no men are six feet tall." *CSX Corp.*, 518 F. 3d, at 1342.

In the last of its textual arguments, Quality Stores draws attention to the boldface heading of §3402(*o*), which states, "Extension of withholding to certain payments other than wages." It contends the heading declares that the payments enumerated within §3402(*o*) are "other than wages." Captions, of course, can be "a useful aid in resolving" a statutory text's "ambiguity." *FTC* v. *Mandel Brothers, Inc.*, 359 U. S. 385, 388–389 (1959). But Quality Stores cannot rely on the statutory heading to support its argument that §3402(*o*), without ambiguity, excludes all severance payments from the definition of wages. The heading states that withholding is extended to "certain payments." This falls short of a declaration that all the payments listed in §3402(*o*) are not wages.

Next, the regulatory background against which §3402(*o*) was enacted illustrates the limited nature of the problem the provision was enacted to address. For this purpose, it is instructive to concentrate on the statutory term "supplemental unemployment benefits," which defines the scope of §3402(*o*)'s income-tax withholding mandate.

The concept of SUBs originated in labor demands for a guaranteed annual wage. When it became clear this was "impractical in their industries, unions such as the Steelworkers and the United Auto Workers transformed their guaranteed annual wage demands into proposals to supplement existing unemployment compensation programs." *Coffy* v. *Republic Steel Corp.*, 447 U. S. 191, 200 (1980). A SUB plan, as originally conceived, offered "second-level protection against layoff" by supplementing unemployment benefits offered by the States. *Ibid.*

In the 1950's, major American employers such as Ford Motor Company adopted SUB plans of this type, agreeing to fund trusts that would provide SUBs to terminated employees. For example, Ford's contract with employees

defined the concept of SUBs as the receipt of "both a state system unemployment benefit and a Weekly Supplemental Benefit . . . without reduction of the state system unemployment benefit because of the payment of the Weekly Supplemental Benefit." Note, Effect of Receiving Supplemental Unemployment Benefits on Eligibility for State Benefits, 69 Harv. L. Rev. 362, 364, n. 11 (1955); see J. Becker, Guaranteed Income for the Unemployed: The Story of SUB (1968). Employer plans that provided SUBs sought "to provide economic security for regular employees" and "to assure a stable work force through periods of short-term layoffs." *Coffy*, *supra*, at 200.

But an obstacle arose. For these plans to work, it was necessary to avoid having the SUBs defined under federal law as "wages." That was because some States only provided unemployment benefits if terminated employees were not earning "wages" from their employers. See Brief for United States 29; *CSX Corp.*, *supra*, at 1334–1335; Note, 69 Harv. L. Rev., at 366 ("The typical state unemployment compensation statute provides that 'an individual shall be deemed unemployed in any week *with respect to* which no *wages* are payable to him and during which he performs no *services* . . .'" (ellipsis and emphasis in original)); *id.,* at 367 ("[S]tates tend to treat as 'wages' those items which the federal government treats as 'wages'").

The inability of terminated employees to receive state unemployment benefits, of course, would render SUBs far less useful to them and their employers. Employers, as a consequence, undertook to ensure that the Federal Government did not construe benefits paid out by SUB plans as "wages." *CSX Corp.*, *supra*, at 1334–1335.

In at least partial response to the prospect of differential treatment of SUBs based on the vagaries of state law, the IRS promulgated a series of Revenue Rulings in the 1950's and 1960's that took the position that SUB payments were not "wages" under FICA as well as for purposes of income-

tax withholding. Rev. Rul. 56–249, 1956–1 Cum. Bull. 488; see Rev. Rul. 58–128, 1958–1 Cum. Bull. 89; Rev. Rul. 60–330, 1960–2 Cum. Bull. 46; see also IRS Technical Advice Memorandum 9416003, 1993 WL 642695 (Apr. 22, 1994) (hereinafter TAM 9416003).

Although the IRS exempted SUBs paid to terminated employees from withholding for income-tax purposes, the payments still were considered taxable income. Rev. Rul. 56–249, 1956–1 Cum. Bull. 488. As a result, terminated employees faced significant tax liability at the end of the year. The Treasury Department suggested Congress authorize the agency to promulgate regulations allowing voluntary withholding. Statements and Recommendations of the Department of the Treasury: Hearings on H. R. 13270 before the Senate Committee on Finance, 91st Cong., 1st Sess., 905–906 (1969).

In 1969, Congress chose instead to address the withholding problem by enacting §3402(*o*). It provides that all severance payments—that is, both SUBs as well as severance payments that the IRS considered wages—shall be "treated as if" they were wages for purposes of income-tax withholding. It is apparent that the definition Congress adopted in §3402(*o*) is not limited to the SUBs that the IRS had deemed exempt from wages under FICA. See §3402(*o*)(2)(A). It must be presumed that Congress was aware that §3402(*o*) covered more than the severance payments that were excluded from income-tax withholding. Not all severance payment plans were tied to state unemployment benefits; and, before §3402(*o*)'s 1969 enactment, the IRS ruled that severance payments not linked to state unemployment benefits were wages for purposes of income-tax withholding. See Rev. Rul. 65–251, 1965–2 Cum. Bull. 395; see also TAM 9416003 (the IRS' original 1956 exception for SUBs provided "a limited exception from the definition of wages for . . . federal income tax withholding . . . only if the payments are de-

signed to supplement the receipt of state unemployment compensation and are actually tied to state unemployment benefits"); *ibid.* ("SUB-pay plans must be designed to supplement unemployment benefits . . .").

Once this background is understood, the Court of Appeals' interpretation of §3402(*o*) as standing for some broad definitional principle is shown to be incorrect. Although Congress need not have agreed with the Revenue Rulings to enact §3402(*o*), its purpose to eliminate the withholding problem caused by the differential treatment of severance payments is the necessary background to understand the meaning and purpose of the provision. The problem Congress sought to resolve was the prospect that terminated employees would owe large payments in taxes at the end of the year as a result of the IRS' exemption of certain SUBs from withholding. It remained possible that the IRS would determine that other forms of SUB plans, perhaps linked differently to state unemployment benefits, should be exempt from withholding. If Congress had only incorporated the Revenue Rulings already in effect, that response may have risked the withholding problem arising once again. On the other hand, by drawing a withholding requirement that was broader than then-current IRS exemptions, Congress avoided these practical problems. A requirement that a form of remuneration already included as wages be treated "as if" it were wages created no administrative difficulties.

The Court of Appeals understood Congress' decision to include within §3402(*o*) a larger set of SUBs than was already exempt from withholding under IRS Revenue Rulings to mean that all SUBs were excluded from the definition of wages. But that assumption, although in the abstract not necessarily an illogical inference, is unsustainable, considering the regulatory background against which §3402(*o*) was enacted. Congress interpreted the Revenue Rulings not at all as a definitive gloss on the

meaning of the term "wages" in §3401. The better reading is that Congress determined that, whatever position the IRS took with respect to certain categories of severance payments, the problem with withholding should be solved by treating all severance payments as wages requiring withholding.

The necessary conclusion is that §3402(*o*) does not narrow the term "wages" under FICA to exempt all severance payments. This reasoning is consistent with *Rowan*, a previous decision interpreting FICA. In *Rowan*, the Court held that Treasury Regulations interpreting "wages"under FICA to include the value of meals and lodging were invalid. The Government conceded, for income-tax purposes, that the taxpayer in *Rowan* was correct to exempt the value of the meals and lodging in computing the wages properly withheld under §3402. 452 U. S., at 250–251. But it argued, nevertheless, that the value of the meals and lodging was taxable as wages under FICA, pursuant to Treasury Regulations. The *Rowan* Court observed that the definition of wages under FICA was in substance the same as for purposes of withholding. *Id.*, at 255. The Court read that similarity to be "strong evidence that Congress intended 'wages' to mean the same thing under FICA . . . and income-tax withholding." *Ibid.* To support that conclusion, the Court noted a "congressional concern for 'the interest of simplicity and ease of administration.'" *Ibid.* (quoting S. Rep. No. 1631, 77th Cong., 2d Sess., 165 (1942)). Because "Congress intended . . . to coordinate the income-tax withholding system with FICA" in order "to promote simplicity and ease of administration," the Court held that it would be "extraordinary" for Congress to intend the definitions of "wages" to vary between FICA and income-tax withholding. 452 U. S*.,* at 257.

The specific holding of *Rowan*—that regulations governing meals and lodging were invalid—has little or no bearing on the issue confronting us here. What is of im-

portance is the major principle recognized in *Rowan*: that simplicity of administration and consistency of statutory interpretation instruct that the meaning of "wages" should be in general the same for income-tax withholding and for FICA calculations.

Quality Stores contends that, under the mandate of §3402(*o*), severance payments are not subject to FICA taxation but are to be deemed wages for purposes of income-tax withholding.  It justifies this differential treatment in the name of uniformity.  But that so-called uniformity as to the definitions of wages (*i.e.*, that severance payments are not wages) is not consistent with the broad textual definitions of wages under FICA and income-tax withholding.  Nor is it consistent with this Court's holding that administrative reasons justify treating severance payments as taxable for both FICA and income-tax purposes.  To read Congress' command to withhold severance payments as an implicit overruling of the broad definition of wages in FICA would disserve the statutory text and the congressional interest in administrative simplicity deemed controlling in *Rowan*.

In concluding, the Court notes that the IRS still provides that severance payments tied to the receipt of state unemployment benefits are exempt not only from income-tax withholding but also from FICA taxation.  See, *e.g.,* Rev. Rul. 90–72, 1990–2 Cum. Bull. 211.  Those Revenue Rulings are not at issue here.  Because the severance payments here were not linked to state unemployment benefits, the Court does not reach the question whether the IRS' current exemption is consistent with the broad definition of wages under FICA.

*   *   *

The severance payments here were made to employees terminated against their will, were varied based on job seniority and time served, and were not linked to the

receipt of state unemployment benefits. Under FICA's broad definition, these severance payments constitute taxable wages. The judgment of the Court of Appeals for the Sixth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KAGAN took no part in the consideration or decision of this case.